

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

January 23, 1992

Honorable Mark H. Dettman
Midland County Attorney
P. O. Box 2559
Midland, Texas 79702

Opinion No. DM-77

Re: Authority of a sheriff to conduct investigations and make arrests outside his county, and related question (RQ-169)

Dear Mr. Dettman:

You have requested our opinion regarding the authority of the Midland County Sheriff to engage in law enforcement activities outside Midland County. You indicate that the sheriff believes "he is entitled to conduct his law enforcement operations anywhere in the State of Texas as well as in other states, which in this case have included Arizona, Oklahoma, Indiana, and Illinois." The activities involve "reverse-sting" operations "in which law enforcement agents pose as drug dealers and agree to sell confiscated narcotics to willing buyers." After funds from sale of the drugs are seized, "these seized funds are forfeited to the sheriff's department and other arresting agencies."

Article 5, section 23, of the Texas Constitution provides that the "duties and prerequisites, and fees of office [of sheriff], shall be prescribed by the Legislature." Pursuant to such authorization, article 2.17 of the Code of Criminal Procedure declares, "Each sheriff shall be a conservator of the peace *in his county*." (Emphasis added.)

In Attorney General Opinion H-1016 (1977), this office was asked whether a sheriff was authorized to make a warrantless arrest outside his county, where the offense is committed in his presence or within his view.[1] Relying primarily on

---

[1]Arrest under warrant extends "to any part of the State; and any peace officer to whom said warrant is directed, or into whose hands the same has been transferred, shall be authorized to execute the same in any county in this State." Code Crim. Proc. art. 15.06.

*Henson v. State*, 49 S.W.2d 463 (Tex. Crim. App. 1932), the opinion concluded that a sheriff, outside his county, had no more authority than did a private individual to make warrantless arrests.[2] In *Henson*, the court had declared:

> In the absence of a warrant of arrest issued under the provisions of article 223, supra [now article 15.06 of the Code of Criminal Procedure], a sheriff as such is not authorized to make an arrest outside of his county.

49 S.W.2d at 465. Furthermore, the court said that the statutes

> evidence the intention of the Legislature to confine the jurisdiction of the sheriff to his county, except in so far as the authority to execute warrants of arrest in any county of the state is conferred by article 223, [Code of Criminal Procedure].

*Id.*

Subsequent to the issuance of Attorney General Opinion H-1016, the legislature enacted section (d) of article 14.03 of the Code of Criminal Procedure. That statute provides:

> A peace officer who is outside his jurisdiction may arrest, without warrant, a person who commits an offense within the officer's presence or view, if the offense is a felony or a violation of Title 9, Chapter 42, Penal Code [disorderly conduct and related offenses]. A peace officer making an arrest under this subsection shall, as soon as practicable after making the arrest, notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magistrate in compliance with Article 14.06 of this code.

---

[2]Article 14.01(a) of the Code of Criminal Procedure states, "A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classified as a felony or as an offense against the public peace."

The question before us is whether the enactment of section (d) of article 14.03 extended the authority of a sheriff to initiate investigations and make arrests outside his county.

Article 14.03(d) in fact makes clear that a peace officer's authority is, in general, *limited* to his geographical jurisdiction. On its face, article 14.03(d) grants to a sheriff no authority beyond that already conferred by article 14.01(a). *See* note 2, *supra*.[3] In our opinion, the purpose of article 14.03(d) is to make clear that a peace officer need not sit idly by while a felony is committed in his plain view. The statute provides, however, that the appropriate law enforcement agency of the foreign jurisdiction is to be brought in as soon as is practicable. In our view, the thrust of article 14.03(d) is to define rather narrowly the limits of a peace officer's authority outside his own jurisdiction.

This conclusion is buttressed by a number of other statutes. Section 411.009(b) of the Government Code, for example, provides that the director of the Department of Public Safety

> may require a sheriff or other police officer in a county or municipality, *within the limits of the officer's jurisdiction*, to aid or assist in the performance of a duty imposed by this chapter. (Emphasis added.)

Section 411.022(a) of the Government Code contrasts the authority of an officer of the Texas Rangers with that of a sheriff:

> An officer of the Texas Rangers is governed by the law regulating and defining the powers and duties of sheriffs performing similar duties, except that the officer may make arrests, execute process in a criminal case *in any county*. (Emphasis added.)

Furthermore, chapter 362 of the Local Government Code provides a mechanism for a governmental body, including a county, to offer the assistance of its law enforcement officers to other jurisdictions. Such authorization would not be

---

[3]Article 14.01(a) permits a warrantless arrest for any felony or "offense against the public peace," while article 14.03(d) authorizes arrest for any felony or violation of the disorderly conduct statutes.

necessary if a sheriff's general authority extended beyond his county. Section 362.002 provides:

> (a) A county, municipality, or joint airport may, by resolution or order of its governing body, provide for, or authorize its chief administrative officer, chief of police, or marshal to provide for, its regularly employed law enforcement officers to assist another county, municipality, or joint airport. This assistance may be provided only when the mayor or other officer authorized to declare a state of civil emergency in the other county, municipality, or joint airport considers additional law enforcement officers necessary to protect health, life, and property in the county, municipality, or joint airport because of disaster, riot, threat of concealed explosives, or unlawful assembly characterized by force and violence or the threat of force and violence by three or more persons acting together or without lawful authority.

> (b) A county, municipality, or joint airport may, by resolution or order of its governing body, enter into an agreement with a neighboring municipality, joint airport, or contiguous county to form a mutual aid law enforcement task force to cooperate in criminal investigations and law enforcement. *Peace officers employed by counties, municipalities, or joint airports covered by the agreement have only the additional investigative authority throughout the region as set forth in the agreement.* The agreement must provide for the compensation of peace officers involved in the activities of the task force.

> (c) A law enforcement officer employed by a county, municipality, or joint airport that is covered by the agreement may make an arrest outside the county, municipality, or joint airport in which the officer is employed but within the area covered by the agreement. The law enforcement agencies of the area where the arrest is made shall be notified of the arrest without delay, and the notified agency shall make available the notice of the arrest in the same manner as if the arrest were made by a member of that agency. (Emphasis added.)

Section 362.003(a) provides that during the time in which a law enforcement officer regularly employed by one jurisdiction is in the service of another political subdivision, he has "all the powers of a regular law enforcement officer" of that political subdivision. In our opinion, the existence of chapter 362, enacted in 1987, makes clear beyond all doubt that a sheriff does not have any general authority to conduct investigations outside his county. His authority to make arrests outside his county is limited by the conditions imposed in article 14.03(d) of the Code of Criminal Procedure.

We note that at least one court, in a decision issued after the enactment of article 14.03(d), has confirmed this conclusion. In *Landrum v. State*, 751 S.W.2d 530 (Tex. App.--Dallas 1988, pet. ref'd), the court held that a city peace officer's jurisdiction to investigate crime extends throughout the county as does his jurisdiction to arrest. In dicta, the court said that "[a] county sheriff's jurisdiction is county-wide." *Id.* at 531. We believe that the court's emphasis on "investigate," as well as "arrest," is significant, and confirms our view that the general power of investigation granted to a sheriff is limited to the jurisdiction for which he was elected: the county. Since the authority of a sheriff to investigate crime is generally limited to his county, it is clear that he can exercise no such authority outside the State of Texas.[4]

You also inquire about the proper disposition of funds seized by the sheriff while operating in areas outside Midland County. Chapter 59 of the Code of Criminal Procedure, enacted in 1989, describes the procedures for the forfeiture of contraband. Article 59.06 provides for the disposition of forfeited property. Section (a) thereof declares that "[a]ll forfeited property shall be administered by the attorney representing the state, acting as the agent of the state." The forfeited property must be administered in accordance "with the provisions of any local agreement entered into between the attorney representing the state and law enforcement agencies." *Id.* We have been informed that an agreement exists

---

[4]Article 14.051 of the Code of Criminal Procedure authorizes a peace officer who is "commissioned and authorized by another state to make arrests for felonies" to make an arrest in Texas when the officer "is in fresh pursuit" of a suspected felon. As of 1991, 42 other states and the District of Columbia, including all of the states bordering Texas, have adopted similar statutory provisions, thus emphasizing that a peace officer may make an arrest outside his home state only under specifically restricted circumstances. Texas is also a party to the Uniform Criminal Extradition Act, article 51.13, Code of Criminal Procedure.

between the attorney for the state[5] and the Midland County Sheriff's Office. Sections (b), (c), and (d) of article 59.06 furnish a detailed description of the procedures that must be followed when an agreement exists.

We have not been furnished with a copy of the existing agreement between the sheriff and the relevant prosecutor. The provision for a "local agreement" specified in article 59.06 requires such an agreement between the prosecuting attorney "in the county in which a forfeiture proceeding is held" and the law enforcement agency. If no "local agreement" controls, section (a) provides that any seized property "shall be sold on the 75th day after the date of the final judgment of forfeiture at public auction under the direction of the county sheriff." Any proceeds resulting from such sale must be distributed as follows:

(1) to any interest holder to the extent of the interest holder's nonforfeitable interest; and

(2) the balance, if any, after deductions of all storage and disposal costs, to be deposited not later than the 30th day after the date of the sale in the state treasury to the credit of the general revenue fund.

Since there appears to have been no authority for the sheriff to have seized the funds in question in the first place, we will not speculate on their proper disposition. We cannot, however, imagine any basis for the position of the commissioners court that funds seized in out-of-county operations, including those outside the State of Texas, should be deposited in the general fund of Midland County. In any event, the proper disposition of funds resulting from a forfeiture based on the extra-jurisdictional activities of a sheriff requires the resolution of a number of fact questions that cannot be addressed in the opinion process.

## SUMMARY

A sheriff has no general authority to investigate criminal activities outside of the geographical boundaries of the county for which he is elected. His authority to make warrantless

---

[5]"Attorney representing the state" is defined for purposes of chapter 59 as "the prosecutor with felony jurisdiction in the county in which a forfeiture proceeding is held under this chapter."

arrests outside his county is circumscribed by the conditions imposed in article 14.03(d) of the Texas Code of Criminal Procedure.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General